UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLEF D. HAYNES, SR.,

    Plaintiff,

v.                                                    Case No. 8:18-cv-2673-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) erred in formulating Plaintiff's residual functional capacity (RFC) and should have either re-contacted his treating physician or ordered a consultative examination. After considering Plaintiff's arguments, Defendant's response, and the administrative record, I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence (docs. 16, 17). I affirm the ALJ's decision.

    *A. Background*

Plaintiff Clef Haynes was born on July 9, 1958. He was 56 years old on his alleged disability onset date of September 14, 2014, with a high school education and a year and a half of community college. Plaintiff's 42-year work history includes past jobs as a shipping supervisor (from 1995 to 2001) and an inventory supervisor (from 2002 through 2014). (R. 35) At the time of the hearing, Plaintiff was living at home with his mother. As he explained, "[s]he's 88 years old, and I initially moved in with her before my diagnosis. I was working out of Texas and she

1

had a stroke and there was nobody in the house so I moved in with her and to take care of her. And now it's almost reversed, she's taking care of me. So she does the bulk of the cooking, only when she wants to." (R. 41)

Plaintiff alleges disability due to diabetes and hypertension and testified these impairments cause him back pain, neck pain, neuropathy in his feet and hands, blurred vision, and fatigue. After a hearing, the ALJ found Plaintiff suffers from a more extensive list of severe impairments: "diabetes mellitus; cervical degenerative disc disease with radiculopathy; narrowing at the C5-6 level with anterior spondylosis; minimal loss of vertebral height at the L1 and L2 levels; hypertension; cardiomyopathy; peripheral vascular disease with occlusion of the mid through distal right superficial femoral artery; and obesity." (R. 12) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as he has the RFC to perform light work:

> He can lift up to 20 pounds occasionally and lift or carry 10 pounds frequently. He can stand or walk for approximately 6 hours and sit for approximately 6 hours, in an 8-hour workday with normal breaks. He can frequently climb ladders, ropes, scaffolds, ramps or stairs, balance, stoop, crouch, kneel or crawl.

(R. 13) The ALJ found that, with this RFC, Plaintiff could perform his past relevant work as a stock control supervisor as that job is performed in the national economy (but not as Plaintiff actually performed it). (R. 18) The Appeals Council denied review. Plaintiff, who has exhausted his administrative remedies, filed this action.

*B. Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or

mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations

omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*C. Discussion*

Plaintiff argues the ALJ's RFC is not supported by substantial evidence, because the ALJ relied on an outdated opinion from a non-examining state agency physician. According to Plaintiff, the ALJ should have re-contacted one of his treating physicians for a more recent opinion or ordered an updated consultative examination. The Commissioner objects, stating there is no need for additional medical opinions because substantial evidence supports the ALJ's determination that Plaintiff retains the RFC for light work.

A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e). This includes both severe and non-severe impairments when determining if the claimant can "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4); 416.945(a)(4). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved

for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c); 416.946(c).

On December 30, 2015, Suzanne Johnson, D.O. – a non-examining state agency physician – opined at the reconsideration level that Plaintiff retained the RFC for light work. (R. 75-76) She based her RFC assessment on her review of all the record medical evidence as of December 30, 2015, including the new evidence Plaintiff submitted at the reconsideration level: a cervical spine X-ray taken at Rose Radiology just a week earlier and August 2015 records from the Family Care Center. (R. 73) Dr. Johnson noted that Plaintiff suffers from diabetes, hypertension, and spine disorders. (*Id.*) And due to Plaintiff's "mildly reduced [ejection fraction] and cervical [degenerative disc disease] with radiculopathy," she assessed Plaintiff with exertional limitations that resulted in an RFC for light work. (R. 75)

The ALJ incorporated this RFC finding into his own analysis. He stated:

On December 30 2015, Suzanne Johnson, D.O., a State Agency physician, concluded that the claimant could perform the following: lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk about 6 hours and sit about 6 hours in an 8-hour workday with normal breaks; unlimitedly push or pull within weights given; frequent ability to perform postural activities; unlimited reaching, handling, and fingering and limited feeling. Dr. Johnson noted that she reduced exertional limitation due to mildly decreased ejection fraction and cervical degenerative disc disease with radiculopathy and feeling due to paresthesias. The undersigned notes that this medical expert reviewed all the available medical evidence at the time and thoroughly supported conclusions by citing to the record. Moreover, this physician is familiar with the Administration's disability program and its evidentiary criteria. Thus, the undersigned accords significant weight to this assessment, as it was consistent with the medical evidence of record as a whole.

(R. 17)

Plaintiffs first argument is that it was error for the ALJ to rely on Dr. Johnson's opinion because it was "outdated and uninformed." (doc. 16 at 10). It is not error, however, for an ALJ to rely on the allegedly outdated opinion of a state agency consultant, when it is obvious the ALJ has

5

considered all the evidence. *Cf. Hendricks v. Colvin*, Case No. 1:12-cv-249-CAS, 2013 WL 5962994, at *16 (N.D. Fla. Nov. 7, 2013) (citing *Zellner v. Astrue*, Case No. 3:08-cv-1205-J-TEM, 2010 WL 1258137 (M.D. Fla. Mar. 29, 2010)) (remanding where ALJ referred only to some of the evidence post-dating the state agency consultation "albeit mostly in a cursory fashion" and where Plaintiff experienced suicidal ideations and was hospitalized for a suicide attempt following the state agency consultation).

Here, it is clear the ALJ also considered the medical evidence post-dating Dr. Johnson's December 2015 assessment, summarizing it over two pages of his opinion. (R. 16-17) As the ALJ noted, Plaintiff did not seek any medical treatment in 2016 beyond "seemingly precautionary vision exams, due to history of diabetes and high blood pressure." (R. 16) In January 2017, Plaintiff underwent lumbar spine imaging due to his chronic low back pain. Carlos Rojas, M.D. made these findings:

> Multiple views of the lumbar spine were performed. Mild left convexity curvature of the thoracolumbar spine. Normal alignment of the lumbar segments. Mild (10-20%) loss of anterior vertebral height at L1. Minimal (10%) loss of anterior to body height also noted at L2. Disc spaces are well-preserved. No bony lesions seen. Extensive calcified atherosclerotic plaque in the abdominal aorta.

(R. 338) On March 27, 2017, cardiologist Reynaldo Mulingtapang, M.D. ordered lower bilateral extremity Doppler studies, because Plaintiff was experiencing right leg pain. (R. 339) He found blockage "of the mid through distal right superficial femoral artery with reconstitution of the popliteal artery and three-vessel runoff to the right foot," and this decreased blood flow could cause pain. (*Id.*) After discussing treatment options with Dr. Mulingtapang, Plaintiff decided to try "walking regimen and cessation of smoking and medications before invasive approach is considered." (R. 363)

The cardiologist diagnosed Plaintiff with diabetic arthropathy and directed Plaintiff to stop smoking, begin medications, and walk for five extra minutes every day despite pain. (R. 365) Plaintiff denied fatigue, palpitations, and weakness, though he had some joint pain. (*Id.*) At a follow-up appointment in May 2017, Anne Dempsey, a nurse practitioner at Dr. Mulingtapang's office, instructed Plaintiff to "continue aggressive risk factor modification, including diet, exercise, and blood pressure and cholesterol control" and smoking cessation." (R. 357) Plaintiff again denied weakness, fatigue, parethesias, and palpitations but admitted to occasional joint pain. (R. 355)

Importantly, the ALJ included "cardiomyopathy; peripheral vascular disease with occlusion of the mid through distal right superficial femoral artery; and obesity" among Plaintiff's severe impairments (R. 12), signaling his consideration of Dr. Mulingtapang's treatment notes. As the ALJ wrote:

> Dr. Mulingtapang stated that the claimant wanted to continue conservative car[e], including a walking regimen, smoking cessation and medication, before attempting a more invasive approach. This provider informed the claimant that he would need to stop smoking, prior to more aggressive intervention. Nonetheless, Dr. Mulingtapang noted that the claimant continued to deny cardiovascular, respiratory, and neurological complaints. He had no edema and good capillary refill, but continued to have reduced femoral pulses.

(R. 17) Consequently, Plaintiff's contention that the ALJ erred in relying on Dr. Johnson's opinion in formulating Plaintiff's RFC because it is outdated is without merit; the ALJ considered all the evidence, including the treatment records Plaintiff submitted after Dr. Johnson's assessment.

Plaintiff also argues it was error for the ALJ to rely solely on Dr. Johnson's opinion on the one hand, while discounting the opinion of Jason Castro, D.O., Plaintiff's treating physician, on the other. As the Commissioner acknowledges, a non-examining doctor's opinion, standing alone, cannot constitute substantial evidence (doc. 17 at 8). But the ALJ is permitted to rely on such an

7

opinion if it does not contradict information in examining doctor's reports. *See Jacks v. Comm'r of Soc. Sec.*, 688 F. App'x 814, 821 (11th Cir. 2017) (finding it was not error for ALJ to credit non-examining source's opinion over examining physician's, because the moderate limitations identified by non-examining source were "broadly consistent with the qualified limitations" identified by examining physician).

Considering this, the issue becomes whether the ALJ erred in discounting Dr. Castro's August 2015 opinion, rendered after treating Plaintiff once, that Plaintiff is incapable of work. (R. 308-09) The ALJ discounted the opinion as "unique, rendered by an individual with a brief treatment history with the claimant, and contradictory his own findings and the record as a whole." (R. 15) I find this is supported by substantial evidence.

To backtrack, medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 at 1240

n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. §§ 404.1527(c); 416.927(c).[1]

Here, the ALJ had good cause to discount Dr. Castro's medical source statement. In June 2014 (prior to his onset date), Plaintiff established care with Nancy Calderon-Polanco, a nurse practitioner at a Tampa General Hospital outpatient clinic. Ms. Calderon-Polanco wrote: "New pt here to establish care. He has multiple concerns he would like to discuss. Pt states he was not seen a PCP in many years. Last time seen doctor was 11 years ago when he went to ER for abdominal pain vs chest pain and was told 'his heart was normal.'" (R. 298) Plaintiff was fatigued, getting headaches on and off, and he noticed vision changes. Because of a family history of diabetes, he sought treatment. He was diagnosed with hypertension, diabetes, and high blood pressure and advised to make lifestyle changes and referred to cardiology due to an abnormal baseline electrocardiogram (ECG). (R. 298-300)

Plaintiff had another ECG in July 2014 (R. 282-84), which showed "mildly reduced LV EF that, given negative stress test, is likely non-ischemic due to uncontrolled HTN," and Plaintiff was instructed to return in six months. (R. 281) Plaintiff reported that his blood pressure had

---

[1] These sections were rescinded on March 27, 2017, but still apply to claims filed before this date. Plaintiff filed his claim on May 20, 2015.

"improved significantly at home." (R. 279) Dr. Mulingtapang does the best job summarizing Plaintiff's history with cardiologists, in February 2017:

> In 2015, he went to his primary care physician for symptoms of atypical chest pain. An EKG was performed which was felt to be abnormal. He was then referred by his primary care physician to University of South Florida, and saw a physician from Florida cardiovascular institute. He underwent a 2-D echocardiogram and stress test, and was told that the stress test was normal but the 2-D echocardiogram showed mild abnormality in one of these walls. We do not have any records to substantiate this. He was not started on any medication and has no seen any cardiologist since that initial evaluation.

(R. 358)

Meanwhile, Plaintiff visited Dr. Castro, of the same Tampa General Hospital clinic as Ms. Calderon-Polanco, for the first time in August 2015. (R. 304) His blood pressure was elevated despite being on two blood pressure medications, and he complained of chronic fatigue that "has not improved with a leave of absence from work." (R. 304) After an unremarkable physical exam, Dr. Castro advised Plaintiff to exercise three days a week for 30 minutes each time and stop smoking. That same day, Dr. Castro completed a medical source statement provided by Plaintiff's attorney. (R. 308-09) He listed Plaintiff's impairments as "chronic fatigue, diabetic pain, lower back and shoulder pain." (R. 308) On the check-the-box form, he reported Plaintiff would miss more than 10 days of work per month; could only occasionally sit, stand, and walk; could carry up to 20 pounds only occasionally; could never use his hands for fine manipulation; would be off task 90% of a workday due to pain; and would have to take more than two unscheduled breaks during a workday. (R. 308-09)

The only other time Dr. Castro treated Plaintiff was in August 2017, "about 2 years after the earlier encounter." (R. 17; 380-81) Plaintiff complained of chronic back pain and lower extremity numbness "secondary to years of uncontrolled diabetes." (R. 380) Dr. Castro's exam

revealed Plaintiff had tenderness in his lower back; otherwise, Plaintiff had normal cardiovascular, pulmonary, and neurological findings, and he denied shortness of breath, chest pain, and headaches. (R. 380)

Against this backdrop, it was not error for the ALJ to credit Dr. Johnson's opinion over Dr. Castro's.[2] *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (ALJ did not err in giving significant weight to reviewing physician's opinions where he appropriately discounted treating physician's opinion); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 408 (11th Cir. 2010) (same). Dr. Castro's exam findings were inconsistent with the limitations he identified in his cursory medical source statement. In August 2017, after not treating Plaintiff for two years, Dr. Castro instructed Plaintiff to return in six months. This undermines his finding two years earlier that Plaintiff suffers from disabling limitations.

Plaintiff's third point is that the ALJ – even if he properly rejected Dr. Castro's opinion – was required under Social Security Ruling (SSR) 96-5p to either re-contact Dr. Castro for an updated opinion or order a consultative examination.[3] I disagree. A hearing before an ALJ is not an adversary proceeding. While the ALJ has a basic obligation to develop a full and fair record, claimants are responsible for establishing they are eligible for benefits. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Under the regulatory scheme, an ALJ may have a duty to re-contact a medical source when the evidence received from that source is inadequate to determine if the claimant is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). Social Security

---

[2] Indeed, in his brief Plaintiff only challenges the ALJ's RFC formulation (rather than the ALJ's consideration of his treating physicians' opinions). An ALJ's RFC findings need not mirror or match a treating provider's opinions, because the responsibility for assessing the RFC rests with the ALJ. *See Bloodsworth*, 703 F.2d at 1239.

[3] This SSR was rescinded when 20 C.F.R. §§ 404.1527 and 416.927 were rescinded on March 27, 2017. These regulations still apply, however, to claims filed before March 27, 2017.

Ruling 96-5p requires the ALJ to make "every reasonable effort" to re-contact the medical source for clarification of the reasons for the opinion if the evidence does not support a treating source's opinion on any issue reserved for the Commissioner, and the adjudicator cannot ascertain the basis for the opinion from the case record. Put differently, the duty to recontact a treating physician does not arise where the record contained adequate information for the ALJ to render a decision. *Couch v. Astrue*, 267 F. App'x 853, 855-56 (11th Cir. 2008). It is the same with a consultative examination – an ALJ is not required to order a consultative examination when the record contains enough evidence for the ALJ to make an informed decision. *Ingram,* 496 F.3d at 1269.

In evaluating whether it is necessary to remand, we are guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F. 3d 931, 935 (11th Cir. 1995) (quotations and citations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports [his] allegations of disability." *Id*. at 936 n. 9. Here, the record contains substantial evidence that Plaintiff was able to perform light work; there was no need to further develop the evidence. Plaintiff points to no clearly prejudicial evidentiary gaps. Plaintiff's medical care has consisted of mainly conservative treatment and medication management. As the ALJ noted, "[o]verall, the claimant did not require recurring emergency room visits, hospitalization or surgical intervention for any condition." (R. 14) Plaintiff's spondylosis explains his neck pain, and his arterial occlusion explains his lower extremity pain. Otherwise, "the claimant has had rather normal exam findings through the period of disability at issue." (*Id.*)

At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154

(2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. Considering this, there is substantial evidentiary support for the ALJ's decision that Plaintiff could perform light duty work.

Lastly, Plaintiff contends the ALJ should have considered Plaintiff's four decades of work history. Plaintiff does not develop this argument. When evaluating a claimant's subjective complaints of pain, an ALJ is required, under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), to consider a claimant's "prior work record" as a factor; it is only one of many factors, however, considered in evaluating subjective complaints. *See Roane v. Berryhill*, CV-116-059, 2017 WL 3613989, *6 (S.D. Ga. July 31, 2017) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)) ("work history alone does not establish or even enhance a plaintiff's credibility"). Plaintiff does not argue that the ALJ's consideration of Plaintiff's subjective complaints of pain is in error. What is more, the ALJ questioned Plaintiff about his work history at the hearing and incorporated this discussion into his opinion. (R. 18)

*D. Conclusion*

For the reasons stated above, the ALJ's decision is supported by substantial evidence. It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on November 12, 2019.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE